UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRAD PASSWATER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00330-JPH-MJD |
| | ) |
| JENNIFER PHILIPS, | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| SKYLAR SAYLOR, | ) |
| BRANDON WORTH, | ) |
| JOSEPH LEE, | ) |
| NICKOE RUCKER, | ) |
| SHANNON MULLINS, | ) |
| CHRISTOPHER BOOKOUT, | ) |
| KRISTOPHER KIRK, | ) |
| JACKIE SHAW, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING COMPLAINT, GRANTING MOTION FOR COURT ASSISTANCE, AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Brad Passwater is a prisoner currently incarcerated at Wabash Valley Correctional Facility. He filed this civil action under 42 U.S.C. § 1983 based on events that occurred while he was incarcerated at New Castle Correctional Facility ("New Castle"). He alleges that the defendants used excessive force when extracting him from his cell and were deliberately indifferent to his need for medical care. Because Mr. Passwater is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

1

## I. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Passwater names 10 defendants in his complaint: (1) Nurse Jennifer Philips; (2) Wexford of Indiana, LLC ("Wexford"), the contractor that provided medical services to the Indiana Department of Correction ("IDOC") during the time at issue in the complaint; (3) Sergeant Skylar Saylor; (4) Correctional Officer Brandon Worth; (5) Correctional Officer Joseph Lee; (6) Correctional Officer Nickoe Rucker; (7) Correctional Officer Shannon Mullins; (8) Correctional Officer Christopher Bookout; (9) Correctional Officer Kristopher Kirk; and (10)

Correctional Officer Jackie Shaw. Mr. Passwater seeks declaratory relief and money damages.[1] He bases his complaint on the following allegations:

Mr. Passwater has been diagnosed with paranoid schizophrenia. In 2020, he had a severe psychiatric crisis. After he was injected with Haldol, his crisis worsened. He ripped his testicles out of his scrotum and began to try to pull his eyes out. As a result, he is permanently blind in both eyes.[2] After Mr. Passwater was released from the hospital for those injuries, he was transferred to the infirmary at New Castle.

On February 7, 2021, Mr. Passwater was taken to a recreation cage on what he alleges was the pretext that maintenance workers needed to inspect the padded cell where he was housed. Mr. Passwater had been in the recreation cage being evaluated by his mental health case worker shortly beforehand. Mr. Passwater tried to tell correctional officers and mental health care staff for hours that he was having a mental health crisis, but he was ignored. When he was in

---

[1] He also seeks an injunction ordering the defendants to provide him with proper medical care at Wabash Valley, but no such relief is available in this case. Mr. Passwater has been transferred to a different prison and does not allege an ongoing violation of his constitutional rights. Regardless, all of the correctional defendants work for GEO Group, Inc. ("GEO"), the private contractor that runs New Castle, so—even if sued in their official capacities—they have no ability to provide Mr. Passwater with any relief while he is incarcerated at Wabash Valley, which is run by the IDOC, not GEO. Likewise, the Court takes judicial notice that Wexford no longer provides medical services for the IDOC, so it cannot provide him with the care he seeks, either. *See* Centurion Health Provides Correctional Health for Indiana Department of Correction, CENTURION (July 12, 2021), https://www.centurionmanagedcare.com/newsroom/centurion-to-partner-with-indiana-doc-to-provide-comprehensive-healthcare-services.html (last visited May 8, 2023).

[2] The circumstances associated with these events are not at issue in this lawsuit and are being litigated in another case. Mr. Passwater provided them as background to the facts underlying this lawsuit.

3

the recreation cage, Mr. Passwater told his mental health care worker that he was having serious problems being held in the padded cell.

When the officers came to escort Mr. Passwater back to the padded cell, he told them he needed to talk to a mental health care worker again because he believed he should not be in the padded cell. The officers ignored his complaints and told him to cuff up. He refused, began arguing, and tried to spit on the officers. Defendant Sergeant Saylor sprayed Mr. Passwater with pepper spray, striking him in the face and chest area. Once he had been sprayed, Mr. Passwater stopped trying to spit but still refused to cuff up because his mental health crisis was interfering with his ability to understand the situation and comply with the officers' demands. Sergeant Saylor then sprayed Mr. Passwater with another chemical agent, striking him in the face and back.

About 40 minutes later, Mr. Passwater (who is, as explained, blind) heard the lock in the recreation door being manipulated and then suddenly felt himself being lifted in the air by the weight of the force behind the seven-person extraction team (consisting of Officers Worth, Lee, Rucker, Mullins, Bookout, Kirk, and Shaw). He was then slammed to the concrete floor with extreme force, but not before hitting his head on a telephone, causing a contusion on his head and extreme pain. The force of the impact of the officers landing on Mr. Passwater caused something in his back to crack, causing him to scream out in pain. The officers ignored his distress. After Mr. Passwater had been extracted and put into restraints, he complained that his back hurt but was ignored.

Mr. Passwater then saw Nurse Philips, who injected him with an unknown substance. Mr. Passwater told her that his back and head hurt, but she did not examine him in a meaningful way. She also falsely stated in Mr. Passwater's medical records that the only injuries he had were broken scabs on his knee and ankle. She minimized the contusion on his head and falsely stated in his medical records that his back pain was minimal.

Mr. Passwater requested medical attention—such as by submitting health care request forms—but was ignored. Eventually, on March 8, 2021, Dr. Eric Falconer ordered an X-ray, which showed that Mr. Passwater had several fractured ribs. On April 23, 2021, Dr. Falconer ordered another round of X-rays, which showed a wedge fracture of vertebra. Dr. Falconer then ordered an MRI, which confirmed the diagnosis. Mr. Passwater asked for treatment and medication many times but was only given Tyenol and Cymbalta, which were ineffective to alleviate his severe pain.

He alleges that Wexford maintains policies, practices, and customs whereby inmates' symptoms are minimized in an attempt to save money. He also alleges that Wexford maintains policies, practices, and customs of tolerating substandard or delayed medical care by its employees and employing medical personnel with insufficient training to care for seriously mentally ill inmates.

### III. Discussion of Claims

Mr. Passwater alleges that Sergeant Saylor, Officer Worth, Officer Lee, Officer Rucker, Officer Mullins, Officer Bookout, Officer Kirk, and Officer Shaw violated the Eighth Amendment by using excessive force on February 21, 2021.

5

Nurse Philips allegedly violated the Eighth Amendment by failing to conduct a meaningful examination of Mr. Passwater following the extraction, ignoring his complaints of severe pain, and falsifying his medical records, all of which resulted in a delay in Mr. Passwater being diagnosed and treated. He alleges that Wexford policies, procedures, and customs violated the Eighth Amendment and caused a delay in receiving care.

Considering Mr. Passwater's allegations regarding the events of February 7, 2021, and the nature of his injuries, he has adequately alleged Eighth Amendment excessive-force claims against Sergeant Saylor, Officer Worth, Officer Lee, Officer Rucker, Officer Mullins, Officer Bookout, Officer Kirk, and Officer Shaw, and those claims **shall proceed**. *See Stockton v. Milwaukee Cty.*, 44 F.4th 605, 619 (7th Cir. 2022) (for excessive force claims, courts examine whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm; several factors are weighed, including need for force, amount of force, threat reasonably perceived, efforts to temper severity of force, and extent of injury).

As to Nurse Philips, "[p]rison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839

6

F.3d 658, 662 (7th Cir. 2016)). Mr. Passwater has alleged that Nurse Philips ignored his complaints of pain and falsified his records to minimize the extent of his injuries, which were later determined to be significant. Accordingly, he has adequately alleged an Eighth Amendment claim against Nurse Philips, and that claim **shall proceed**.

Finally, as to Mr. Passwater's claims against Wexford, because Wexford acted under color of state law by contracting to perform a government function—providing healthcare services to inmates—it is treated as a government entity for purposes of 42 U.S.C. § 1983 claims. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019). Therefore, a claim against Wexford must be based on a policy, practice, or custom that caused a constitutional violation. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To prevail on such a claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). Mr. Passwater alleges that Wexford maintained policies, practices, or customs (such as minimizing inmate symptoms to save money) that caused a delay in receiving adequate treatment for the injuries he suffered during the extraction. These allegations are sufficient to state an Eighth Amendment claim against Wexford, and that claim **shall proceed**.

7

This summary of claims includes all of the viable claims identified by the Court. All other claims are dismissed. If Mr. Passwater believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through June 8, 2023,** in which to identify those claims.

### IV. Service of Process and Conclusion

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Jennifer Philips; Wexford of Indiana, LLC; Skylar Saylor; Brandon Worth; Joseph Lee; Nickoe Rucker; Shannon Mullins; Christopher Bookout; Kristopher Kirk; and Jackie Shaw in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. [2], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve Wexford of Indiana, LLC, electronically. Nurse Philips is identified as employees of Wexford. Wexford is **ORDERED** to provide the full name and last known home address of Nurse Philips if she does not waive service if it has such information. This information may be provided to the Court informally or may be filed *ex parte*.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Mr. Passwater's motion for court assistance, dkt. [10], is **granted** to the extent that the Court explains that he has paid a $30.00 initial partial filing fee for this case and that a collection order will be entered via separate entry.

The Court also takes judicial notice that the Court recruited counsel to represent Mr. Passwater in *Passwater v. Pretorius*, No. 2:21-cv-475-MPB-MG, dkts. 18, 29 (S.D. Ind.), and *sua sponte* informs Mr. Passwater that it will attempt to recruit counsel to represent him for this case, too, unless he informs the Court that he does not wish the Court to attempt to recruit counsel to represent him for this case. If the Court recruits counsel to represent him, the following conditions apply: (1) while he sets the objectives of the litigation, it is usually counsel's choice as to the strategies used to accomplish that objective; (2) he will fully cooperate with recruited counsel and, if he does not do so, recruited counsel may withdraw; (3) counsel is not responsible for paying the costs associated with this lawsuit; (4) he is not entitled to free legal counsel and recruited counsel may require him to enter into a contingency fee agreement to represent him in this action; (5) a portion of any monetary recovery (not to exceed 25%) may be used to satisfy any amount of attorney's fees awarded under 42 U.S.C. § 1983; (6) he will receive counsel only if an attorney volunteers to take his case; and (7) if any answers in his motion to proceed *in forma pauperis* are false, he may be subject to sanctions, including dismissal of this case. If Mr. Passwater does **not** want the Court to attempt to recruit counsel to represent him for this case, he must inform the Court in writing on or before **May 30, 2023**.

**SO ORDERED.**

Date: 5/12/2023

        _James Patrick Hanlon_
        James Patrick Hanlon
        United States District Judge
        Southern District of Indiana

Distribution:

BRAD PASSWATER
145785
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Electronic service to Wexford of Indiana, LLC

Nurse Jennifer Philips – MEDICAL STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Skylar Saylor - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Brandon Worth - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Joseph Lee - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Nickoe Rucker - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Shannon Mullins - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Christopher Bookout - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Kristopher Kirk - STAFF

New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362

Jackie Shaw - STAFF
New Castle Correctional Facility
1000 Van Nuys Rd.
New Castle, IN 47362